MDR

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Nides Valencia, Jr., | No. CV 14-1359-PHX-DGC (MEA) |
| Plaintiff, | |
| vs. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

On June 18, 2014, Plaintiff Gregory Nides Valencia, Jr., who is confined in the Arizona State Prison Complex-Lewis in Buckeye, Arizona, filed a *pro se* civil rights Complaint (Doc. 1) pursuant to 42 U.S.C. § 1983 and invoked the Court's supplemental jurisdiction over his state law claims. He also filed an Application to Proceed *In Forma Pauperis*. On July 24, 2014, he filed a second Application to Proceed *In Forma Pauperis* (Doc. 5). On August 4, 2014, he filed a Motion for Preliminary Injunction (Doc. 6) and a Memorandum and a Declaration in support of the Motion.

The Court will grant the second Application to Proceed, order Defendant Martin to answer the Eighth Amendment claim regarding Defendant Martin's denial of a no-nitrate diet for Plaintiff, dismiss without prejudice the remaining claims and Defendants, and deny without prejudice the Motion for a Preliminary Injunction.

**I.     Second Application to Proceed *In Forma Pauperis* and Filing Fee**

Plaintiff's second Application to Proceed *In Forma Pauperis* will be granted. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C.

TERMPSREF

§ 1915(b)(1).  The Court will assess an initial partial filing fee of $4.63.  The remainder of the fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00.  28 U.S.C. § 1915(b)(2).  The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

## II.     Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

## III. Complaint

In his Complaint, Plaintiff sues nineteen Defendants in their individual and official capacities: Arizona Department of Corrections (ADOC) Director Charles L. Ryan; Wexford Health Services, Inc. (Wexford); Corizon Health Services, Inc. (Corizon); Trinity Food Services, Inc. (Trinity); ADOC/Corizon Doctors Anderson and Thomas A. Bell; ADOC/Corizon Nurse Practitioner Laurence Ende; ADOC/Corizon Nurses Martin and Connor; ADOC/Corizon Psychiatrists Jawad Riaz, Rawa, and Charles; Health Site Managers Linda Hammer, Brenda Rojas, and Cameron Lewis; "Regional Operation" Jim Reinhart; Assistant Deputy Warden Aguilar; Correctional Officer IV Frisbee; and ADOC/Trinity Dietician April Dishman.

Plaintiff alleges violations of the Eighth Amendment prohibition against cruel and unusual punishment regarding his medical care. Plaintiff asserts that in June 2012, he developed "an apparent sensitivity to chemical substances," including a sensitivity to sodium nitrates, which are found in processed meats served by the ADOC.[1] Plaintiff contends that he must consume protein to maintain his proper nutrition and the processed meats provided by ADOC are his main source of protein.[2] Plaintiff asserts that ingesting sodium nitrates causes him to suffer from vertigo, chills, fatigue, weakness, migraine

---

[1] Plaintiff also asserts that he also developed sensitivities to caffeine, nicotine, artificial sweeteners, and medications. Plaintiff has, however, limited his claim to sodium nitrates, conceding that nicotine and caffeine are not provided by ADOC and that, although artificial sweeteners are provided by ADOC, he can avoid them and they are not necessary for maintaining proper nutrition.

[2] Plaintiff asserts that he has voluntarily abstained from eating lunch meats because they are the main source of his "aggravation," but alleges that he must eat the chicken and ground chicken, both of which make him "ill."

headaches, arrhythmia, muscle spasms/cramping, and "parasthesia," which Plaintiff contends is "temporary partial paralysis" that can lead to strokes and can be fatal.[3]

Plaintiff asserts that on October 19, 2012, he suffered "parasthesia" after eating graham crackers, the medical department was notified, the medical department did not respond, and Plaintiff laid on the recreation yard for 20 minutes until officers were able to locate a wheelchair and take Plaintiff to the medical department. Plaintiff contends that the medical staff took Plaintiff's vitals and had him provide a urine sample. Plaintiff states that his vitals were normal, his urine did not show that he had taken drugs, and his urine showed that he was properly hydrated. Plaintiff states that he was ordered to stay in bed for 3 days, but no further treatment was provided.

Plaintiff claims that he suffered "parasthesia" again on October 30, 2012, after eating two bologna sandwiches the day before. He claims he was lying on his back and officers moved him to the floor, where he laid for fifteen minutes until medical staff arrived. A nurse took his vitals and assessed his sugar levels, all of which were normal, and concluded that Plaintiff was fine, even though Plaintiff was unable to sit, stand, or move his hands or feet. Plaintiff states that he argued for fifteen minutes that he was not fine, at which point the nurse left. Plaintiff states that he was unable to move his hands or feet for another ten minutes. Plaintiff claims no further treatment was provided.

Plaintiff asserts that he suffered "parasthesia" again on June 5, 2013. He claims he was placed in a wheelchair and taken to the medical department, where Defendant Anderson, based on Plaintiff's statement that his chest was tight and he was having difficulty breathing, stated that Plaintiff may have had a heart attack and ordered Plaintiff transported to the hospital. At the hospital, Plaintiff's blood was tested and a doctor stated that Plaintiff's potassium and magnesium levels were low and provided Plaintiff

---

[3] "Paresthesia" is a "burning or prickling sensation that is usually felt in the hands, arms, legs, or feet, but can also occur in other parts of the body. The sensation, which happens without warning, is usually painless and described as tingling or numbness, skin crawling, or itching." National Institute of Health, National Institute of Neurological Disorders and Stroke, Paresthesia Information, http://www.ninds.nih.gov/disorders/paresthesia/paresthesia.htm (last visited Sept. 5, 2014).

with mineral supplements. Plaintiff was returned to the prison, where he received the supplements and his blood was tested. Plaintiff claims he received no further treatment after his potassium and magnesium levels returned to normal.

Plaintiff contends that on June 18, 2013, a doctor told Plaintiff that he may be experiencing sensitivity to sodium nitrates and submitted a "no nitrates" diet card for Plaintiff. Plaintiff asserts that a nurse told him on June 21, 2013, that his "no nitrate diet" was denied. Plaintiff states that Defendant Martin denied the diet, despite the diet card having been submitted by the doctor. Plaintiff contends that Defendant Martin acted with deliberate indifference by denying a diet prescribed by the doctor and that doing so subjected Plaintiff to a substantial risk of harm. Plaintiff also asserts that Defendants Trinity and Corizon "per policy *do not* have an authorized 'no nitrate diet' and are not authorized to provide the aforesaid diet." Plaintiff contends that Defendants Trinity and Corizon acted with deliberate indifference by failing to fulfill the doctor's prescription for a no-nitrate diet, and that this subjected Plaintiff to a substantial risk of harm.

Plaintiff alleges that he suffered "parasthesia" again on June 30, 2013, after eating a hamburger the day before. Plaintiff states that he was in the dining hall, a sergeant called the medical department, but the medical department did not respond for 20 minutes. Plaintiff asserts that Defendant Connor arrived and "was very rude and callous," threatened Plaintiff with disciplinary sanctions if he was "faking" his symptoms, accused Plaintiff of faking his symptoms, rudely stated that "it is written in your medical file that you fake your symptoms," and stated that he was "only taking Plaintiff to [the medical department] because he had to." At the medical department, Defendant Connor took Plaintiff's vitals, which were normal. When Plaintiff asked Defendant Connor if he could explain why Plaintiff's hands were cramped, Defendant Connor was unable to do so. Defendant Connor kept Plaintiff in a holding cell for 30 minutes, after which Plaintiff walked back to his cell. No further treatment was provided.

Plaintiff contends that on January 9, 2014, "after already exhausting his damage claim," he met with Defendants Frisbee and Aguilar. After discussing Plaintiff's medical

1   needs, Defendant Aguilar had Plaintiff sign "I accept the informal resolution" on his
2   grievance and explained to Plaintiff that he could submit a grievance if he was unsatisfied
3   with the informal resolution. According to Plaintiff, the resolution was that an e-mail
4   would be sent to Defendant Dishman requesting clarification regarding the approval of a
5   no-nitrate diet. Plaintiff claims that Defendants Frisbee and Aguilar were attempting to
6   intentionally delay and prevent Plaintiff from exercising his rights of access to the courts
7   and his Eighth Amendment rights and that this also constituted deliberate indifference.

8         Plaintiff admits that "Defendants" have provided some treatment to Plaintiff.
9   Plaintiff states that he was tested for Hepatitis C (he tested negative); his blood was tested
10  in August 2012 to check his sugar and sodium levels (his results were within normal
11  levels); and he was tested in August 2013 to determine if he was allergic to peanuts,
12  sugar, beef, chicken or turkey (he was not). Plaintiff also claims Defendant Ende
13  prescribed a medication for seizures on December 22, 2012, but the medication caused
14  Plaintiff to have dizziness; and Defendant Ende prescribed another seizure medication
15  that caused Plaintiff to have dizziness, nausea, and vomiting. Plaintiff claims Defendant
16  Rawa evaluated Plaintiff for anxiety on July 17, 2013, diagnosed Plaintiff with anxiety,
17  and prescribed a medication that caused Plaintiff to have dizziness; Defendant Riaz
18  prescribed another medication for anxiety, but it caused Plaintiff to have dizziness,
19  fatigue, nausea, and migraines; and Defendant Charles prescribed another anxiety
20  medication on March 28, 2014, but that medication caused Plaintiff to have dizziness,
21  nausea, and migraines. Plaintiff states that at every psychiatric evaluation he claimed he
22  was not suffering from anxiety, but rather from a sensitivity to chemicals, as diagnosed
23  by the doctor in July 2013. Plaintiff also alleges that Defendant Ende gave Plaintiff a
24  "migraine speech" on July 10, 2013, in which he suggested that Plaintiff's body may be
25  experiencing a physiological change that may have occurred with age after a
26  methamphetamine addiction. In addition, Plaintiff contends that on July 12, 2013, a
27  neurologist evaluated Plaintiff, concluded that Plaintiff was suffering from carpal-pedal
28  spasms, and advised Plaintiff to stop ingesting whatever was causing the spasms.

TERMPSREF

- 6 -

Plaintiff asserts that he has complained to Defendants Ryan, Aguilar, Frisbee, Wexford, Corizon, Bell, Ende, Connor, Riaz, Anderson, Rawa, Charles, Hammer, Rojas, Reinhart, Dishman, and Lewis about his serious medical needs "to no avail"; that Defendants Ryan, Wexford, and Corizon have not provided "confirmation nor treatment" regarding Plaintiff's injuries; and that Defendants Ryan, Wexford, Corizon, Anderson, Connor, Ende, Rawa, Charles, and Riaz acted with "deliberate indifference and negligence" when they knowingly failed to adhere to the doctor's diagnosis regarding nitrate-sensitivity. Plaintiff asserts that he has suffered pain, damage to his equilibrium, vertigo, fatigue, weakness, difficulty concentrating and retrieving information from his short-term memory, and "jolts – [his] hands, feet, and legs thrust out in an outward direction."

Plaintiff also asserts a claim under the Americans with Disabilities Act (ADA). He asserts that once his sensitivity to sodium nitrates has been diagnosed he will qualify as an American with a disability. He contends that ADOC has "A.D.A. cells for prisoners with a disability" and that he needs to be assigned to one of these cells, on a lower tier/lower bunk, and without a cellmate.

Finally, Plaintiff contends that he is actually innocent of burglary and murder and was wrongfully convicted in violation of the Fourteenth Amendment.

In his Request for Relief, Plaintiff seeks declaratory and injunctive relief, monetary damages, a jury trial, and his costs of suit.

**IV.  Failure to State a Claim**

Although *pro se* pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

. . . .

. . . .

TERMPSREF

### A.     Official Capacity Claims

Any official capacity claims Plaintiff may be asserting against employees of Defendants Wexford, Corizon, and Trinity are duplicative because Plaintiff has also sued Defendants Wexford, Corizon, and Trinity. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978) ("official-capacity suits general represent only another way of pleading an action against an entity of which an officer is an agent"). Thus, the Court will dismiss as duplicative any official capacity claims against employees of Defendants Wexford, Corizon, and Trinity.

As to any official capacity claims Plaintiff may be asserting against ADOC employees, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Plaintiff cannot maintain a lawsuit for damages against ADOC employees in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officials sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."); *see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) ("[A] state is not a 'person' for purposes of section 1983. Likewise 'arms of the State' such as the Arizona Department of Corrections are not 'persons' under section 1983.") (citation omitted).

Plaintiff may maintain a lawsuit against ADOC employees in their official capacity for prospective injunctive relief. *See Will*, 491 U.S. at 71, n.10 ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985))); *see also Flint v. Dennison*, 488 F.3d. 816, 825 (9th Cir. 2007) ("[A] suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity."). However, "in an official-capacity suit the entity's

'policy or custom' must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166; *see also Los Angeles County v. Humphries*, 562 U.S. 29, 131 S. Ct. 447, 453-54 (2010) (the "'policy or custom' requirement [in *Monell*] applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective."). A plaintiff must allege, as a matter of law, that the policy or custom caused him to suffer constitutional injury. *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006). Plaintiff does not allege that any ADOC employee was acting pursuant to a specific State of Arizona or ADOC policy or custom or that such a policy or custom caused Plaintiff to suffer a constitutional injury. Thus, the Court will dismiss without prejudice any official capacity claims against ADOC employees.

### B.    Individual Capacity Eighth Amendment Claims

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). There is no *respondeat superior* liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell*, 436 U.S. at 691-92; *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Conclusory allegations that a Defendant or group of Defendants has violated a constitutional right are insufficient.

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious

medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett*, 439 F.3d at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

### 1. Defendants Ryan, Wexford, Bell, Hammer, Rojas, Lewis, Reinhart, and Dishman

Plaintiff's allegations against Defendants Ryan, Wexford, Bell, Hammer, Rojas, Lewis, Reinhart, and Dishman are nothing more than vague and conclusory allegations against a group of Defendants, without any factual specificity, as to what any particular Defendant did or failed to do. Although Plaintiff alleges that he complained to these Defendants "to no avail," he does not identify when he complained to each Defendant, the substance of his complaint, what each Defendant did or failed to do, and how that particular Defendant's conduct constituted deliberate indifference to a serious medical need. The Court will dismiss without prejudice Plaintiff's claims against Defendants Ryan, Wexford, Bell, Hammer, Rojas, Lewis, Reinhart, and Dishman.

### 2. Defendants Corizon and Trinity

To state a claim under § 1983 against a private entity performing a traditional public function, such as providing meals or medical care to prisoners, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). A plaintiff must allege the specific policy or custom and how it violated his constitutional rights. A private entity is not liable simply because it employed individuals who allegedly violated a plaintiff's constitutional rights. *See Tsao*, 698 F.3d at 1139.

Plaintiff's only specific factual allegation against Defendants Corizon and Trinity is that these Defendants "per policy *do not* have an authorized 'no nitrate diet' and are not authorized to provide the aforesaid diet" and that they "act with deliberate indifference in failing to fulfill a doctor's prescription for a no nitrate diet." These allegations are still nothing more than conclusory allegations against a group of defendants, without any factual specificity as to *each* Defendant's policy or custom. Plaintiff has failed to allege facts to support that Defendant Corizon promulgated or endorsed a specific policy or

**TERMPSREF**

- 11 -

custom of rejecting a doctor's recommendation for a no-nitrate diet or a specific policy or custom of refusing to authorize a no-nitrate diet and has failed to allege facts to support that Defendant Trinity promulgated or endorsed a specific policy or custom of rejecting a doctor's recommendation for a no-nitrate diet or a specific policy or custom of refusing to authorize a no-nitrate diet.  Moreover, even if such a policy existed, Plaintiff's has failed to identify how such a policy violated his constitutional rights  Although Plaintiff alleges that Defendant Martin denied Plaintiff's no-nitrate diet, he does not allege that she denied the diet pursuant to a policy or custom of either Defendant Corizon or Defendant Trinity. Thus, the Court will dismiss without prejudice Defendants Corizon and Trinity.

### 3. Defendant Anderson

Plaintiff's only specific allegation against Defendant Anderson is that after Plaintiff suffered "parasthesia" on June 5, 2013, and Defendant Anderson stated that Plaintiff may have had a heart attack and ordered him to be transported to the hospital. This does not rise to the level of deliberate indifference to a serious medical need.  Thus, the Court will dismiss without prejudice Plaintiff's claim against Defendant Anderson.

### 4. Defendants Ende, Rawa, Riaz, and Charles

Plaintiff's only specific factual allegations against Defendant Ende are that he prescribed medications to treat anxiety, even though Plaintiff claimed he did not have anxiety, and gave Plaintiff a "migraine speech."  Plaintiff's only specific factual allegations against Defendant Rawa are that Defendant Rawa evaluated Plaintiff, diagnosed him as having anxiety, and prescribed medication.  Plaintiff's only allegations against Defendants Riaz and Charles are they prescribed medication for anxiety. Plaintiff's allegations against Defendants Ende, Rawa, Riaz, and Charles do not rise to the level of deliberate indifference.  *See Sanchez*, 891 F.2d at 242 ("A difference of opinion does not amount to deliberate indifference").  The Court will dismiss without prejudice Defendants Ende, Rawa, Riaz, and Charles.

### 5. Defendant Connor

Plaintiff's only specific factual allegations against Defendant Connor are that

1  Defendant Connor was rude, callous, and accused Plaintiff of faking his illness, but
2  nevertheless transported him to the medical department, assessed his vital signs, and
3  stated that he could not explain Plaintiff's hand cramping.  These allegations do not rise
4  to the level of deliberate indifference.  Thus, the Court will dismiss without prejudice
5  Defendant Connor.

### 6. Defendants Aguilar and Frisbee

Plaintiff's only specific factual allegations against Defendants Aguilar and Frisbee are that they met with Plaintiff regarding his medical needs and attempted to resolve his grievance.  This does not constitute deliberate indifference to his medical needs.

In addition, regarding Plaintiff's allegation that Defendants Frisbee and Aguilar were trying to delay and prevent Plaintiff from exercising his rights of access to the courts by attempting to informally resolve Plaintiff's grievance, Plaintiff has failed to state a claim.  "[P]risoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without *active interference* by prison officials."  *Silva v. DiVittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011) (emphasis in original).  The right of meaningful access to the courts prohibits officials from actively interfering with inmates' attempts to prepare or file legal documents.  *Lewis v. Casey*, 518 U.S. 343, 350 (1996).  As a matter of standing, for an access-to-courts claim, a plaintiff must show that he suffered an "actual injury"— i.e., "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."  *Id.* at 348 (citation omitted). Plaintiff does not allege that he suffered any actual injury as a result of Defendants Aguilar and Frisbee's conduct.  Thus, the Court will dismiss without prejudice Plaintiff's access to the courts claim.

Because Plaintiff has failed to state a deliberate indifference claim or an access to the courts claim against Defendant Aguilar and Frisbee, the Court will dismiss without prejudice Defendants Aguilar and Frisbee.

. . . .

TERMPSREF

- 13 -

### C. Americans with Disabilities Act

Under Title II of the Americans with Disabilities Act, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state an ADA claim, a plaintiff must demonstrate that he:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1021 (9th Cir. 2010) (quoting *McGary v. City of Portland,* 386 F.3d 1259, 1265 (9th Cir. 2004)).

Plaintiff's ADA claim appears to be nothing more than an assertion that he would like to be placed in an ADA cell, on a lower tier/lower bunk, without a cellmate. He does not allege that he requested these accommodations, to whom he directed his request, or that his request was denied. Thus, even if he would be classified as an individual with a disability, he has failed to allege that any Defendant refused to accommodate his needs or discriminated against him by reason of his disability. Thus, the Court will dismiss without prejudice Plaintiff's ADA claim.

### D. Claim of Actual Innocence

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under . . . 42 U.S.C. § 1983." *Muhammad v. Close*, 540 U.S. 749, 750 (2004). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Id.* (citation omitted); *see also Badea v. Cox*, 931 F.2d

573, 574 (9th Cir. 1991). Plaintiff's claim of actual innocence is a challenge to the validity of his convictions and is not cognizable under § 1983. Thus, the Court will dismiss his actual innocence claim.

### E. Negligence

Plaintiff's sole claim of "negligence" is that a group of Defendants acted with "deliberate indifference and negligence" when they knowingly failed to follow the doctor's diagnosis of nitrate sensitivity. This vague and conclusory allegation against a group of defendants is insufficient to state a negligence claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Therefore, the Court will dismiss without prejudice Plaintiff's negligence claim.

## V. Claims for Which an Answer Will be Required

Liberally construed, Plaintiff has stated an Eighth Amendment deliberate indifference claim against Defendant Martin regarding Defendant Martin's denial of Plaintiff's no-nitrate diet even though that diet had been prescribed by a doctor. The Court will require Defendant Martin to answer this claim.

## VI. Motion for Preliminary Injunction

Whether to grant or deny a motion for a preliminary injunction is within the Court's discretion. *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132-33 (9th Cir. 1979). To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party has the burden of proof on each element of the test. *Environmental Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

A preliminary injunction is an extraordinary and drastic remedy and will not be granted absent a clear showing of likely success in the underlying claim and possible

TERMPSREF

...

irreparable injury.  *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*). An injunction or temporary restraining order is appropriate to grant intermediate relief of the same character as which may be granted finally, and relief is not proper when requested on matters lying wholly outside the issues in suit.  *See DeBeers Consol. Mines v. United States.*, 325 U.S. 212, 220 (1945); *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir.), *amended*, 131 F.3d 950 (11th Cir. 1997).  To obtain injunctive relief, the party "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994).

Much of the relief Plaintiff seeks in his Motion appears to relate to issues and Defendants who have been dismissed in this Order.  Thus, the Court, in its discretion, will deny Plaintiff's Motion for Preliminary Injunction without prejudice to Plaintiff filing a new motion for a preliminary injunction seeking relief only against Defendant Martin regarding the no-nitrate diet.

**VII.  Warnings**

    **A.  Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release.  Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot.  Failure to comply may result in dismissal of this action.

    **B.  Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

    **C.  Copies**

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a

copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4. If Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be notified of the requirements for service and copies for the Court that are required for inmates whose cases are not subject to General Order 14-17.

### D.    Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)    Plaintiff's second Application to Proceed *In Forma Pauperis* (Doc. 5) is **granted**.

(2)    As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $4.63.

(3)    Plaintiff's Americans with Disabilities Act, actual innocence, and negligence claims are **dismissed** without prejudice.

(4)    Defendants Ryan; Wexford Health Services, Inc.; Corizon Health Services, Inc.; Trinity Food Services, Inc.; Anderson; Bell; Ende; Riaz; Rawa; Charles; Connor; Hammer; Rojas; Lewis; Reinhart; Aguilar; Frisbee; and Dishman are **dismissed** without prejudice.

(5)    Defendant Martin must answer Plaintiff's Eighth Amendment claim regarding the denial of a no-nitrate diet.

(6)    Plaintiff's Motion for Preliminary Injunction (Doc. 6) is **denied without prejudice**.

TERMPSREF

(7) The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendant Martin.

(8) Plaintiff must complete[4] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(9) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(10) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(11) The United States Marshal must notify Defendant of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendant must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

> (a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and
>
> (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service

---

[4] If Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(12)   **If Defendant Martin agrees to waive service of the Summons and Complaint, Defendant Martin must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(13)   Defendant Martin must answer the relevant portion of the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(14)   This matter is referred to Magistrate Judge Mark E. Aspey pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 12th day of September, 2014.

_David G. Campbell_
David G. Campbell
United States District Judge