**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Nidez Valencia, | No. CV-14-01359-PHX-DGC (JZB) |
| Plaintiff, | **ORDER** |
| v. | |
| Charles L. Ryan, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's Motion to Grant Plaintiff's Untimely Motion for Leave to File a First Amended Complaint. (Doc. 23.) Plaintiff has also lodged a Motion for Leave to File a First Amended Complaint (Doc. 24), his Proposed First Amended Complaint (Doc. 25), and a Verification of his First Amended Complaint (Doc. 26). Also pending before the Court is Defendant Molina's (formerly known as Defendant Martin) Motion for Summary Judgment. (Doc. 29.)

The Court will deny Plaintiff's Motion to Grant Plaintiff's Untimely Motion for Leave to File a First Amended Complaint (Doc. 23) and Plaintiff's Motion for Leave to File a First Amended Complaint (Doc. 24) as moot under Rule 15 of the Federal Rules of Civil Procedure. The Court will dismiss Plaintiff's official capacity claims against employees of Wexford, Corizon, and Trinity, and order all of the Defendants to answer Plaintiff's remaining Eighth Amendment claims. Finally, the Court will deny Defendant Molina's Motion for Summary Judgment as both moot and premature.

## I.   Plaintiff's Motions For Leave to Amend

On June 18, 2014, Plaintiff, who is confined in the Arizona State Prison Complex-Lewis in Buckeye, Arizona, filed a *pro se* civil rights Complaint (Doc. 1) pursuant to 42 U.S.C. § 1983 and invoked the Court's supplemental jurisdiction over his state law claims.  He also filed an Application to Proceed In Forma Pauperis.  On July 24, 2014, he filed a second Application to Proceed In Forma Pauperis.  (Doc. 5.)  On August 4, 2014, he filed a Motion for Preliminary Injunction (Doc. 6) and a Memorandum and a Declaration in support of the Motion.

On September 12, 2014, the Court granted Plaintiff's second Application to Proceed in Forma Pauperis, ordered Defendant Molina to answer the Eighth Amendment claim regarding Defendant Molina's denial of a no-nitrate diet for Plaintiff, dismissed without prejudice the remaining claims and Defendants, and denied without prejudice the Motion for a Preliminary Injunction.

On September 25, 2014, Plaintiff filed a Motion for Preliminary Injunction, and on October 2, 2014, Plaintiff filed a Motion for Reconsideration.  (Docs. 14, 18.)   On November 25, 2014, the Court denied Plaintiff's Motion for Preliminary Injunction without prejudice and denied Plaintiff's Motion for Reconsideration.  (Doc. 22.)   On January 9, 2015, Plaintiff filed his pending Motion to Grant his Untimely Motion for Leave to File a First Amended Complaint.  (Doc. 23.)  In the Motion, he states that the Court's November 25, 2014 Order required him to file a First Amended Complaint within 21 days of that Order.  (Doc. 23 at 1.)  Plaintiff requests the Court deem his Motion for Leave to Amend as timely filed.

The Court's November 25, 2014 Order instructed Plaintiff that if he "wants to amend his Complaint to present additional allegations, he must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure."  (Doc. 22 at 3 n.1.)    Rule 15 of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) . . . 21 days after service of a responsive pleading." Further,

1  Rule 15.1(b) of the Local Rules of Civil Procedure provides the following:

> If a party files an amended pleading as a matter of course or with the opposing party's written consent, the amending party must file a separate notice of filing the amended pleading. The notice must attach a copy of the amended pleading that indicates in what respect it differs from the pleading which it amends, by bracketing or striking through the text that was deleted and underlining the text that was added. The amended pleading must not incorporate by reference any part of the preceding pleading, including exhibits. If an amended pleading is filed with the opposing party's written consent, the notice must so certify.

LRCiv 15.1(b).

Plaintiff lodged his Motion for Leave to Amend on January 9, 2015, before Defendant Molina filed her Answer to his initial Complaint. (Docs. 24, 25, 28.)  Because Plaintiff was within the time permitted to amend his Complaint "as a matter of course" under Rule 15 of the Federal Rules of Civil Procedure, the Court will deny Plaintiff's Motions at Doc. 23 and Doc. 24 as moot.  The Court further finds that Plaintiff has substantially complied with Rule 15.1 of the Local Rules of Civil Procedure by sufficiently explaining the additions to his First Amended Complaint.  (*See* Doc. 24.) The Clerk shall file Plaintiff's First Amended Complaint, lodged at Doc. 25, as well as Plaintiff's Verification, lodged at Doc. 26.

## II.   Screening of IFP Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

## III.   Plaintiff's First Amended Complaint

In his First Amended Complaint, Plaintiff sues nine Defendants in their individual and official capacities:  Arizona Department of Corrections (ADOC) Director Charles L. Ryan; Wexford Health Services, Inc. (Wexford); Corizon Health Services, Inc. (Corizon); Trinity Food Services, Inc. (Trinity); ADOC/Trinity Dietitian April Dishman,[1] ADOC/ Corizon Nurse Molina; and ADOC/Corizon Facility Health Administrators Linda Hammer, Brenda Rojas, and Cameron Lewis.  (*See* Doc. 25.)

Plaintiff alleges violations of the Eighth Amendment prohibition against cruel and unusual punishment regarding his medical care against each Defendant.  Plaintiff asserts

---

[1] The Court notes that although Plaintiff presents numerous allegations against "Defendant Dishman," he did not name her as a Defendant in the caption or on Page 2 of his First Amended Complaint.  Liberally construing Plaintiff's pleading, however, the Court will construe his First Amended Complaint having named her as a Defendant.  The Clerk of Court will be instructed to add her name to the docket.

that in June 2012, he developed "a sensitivity to chemical substances," including sodium nitrates, which are found in processed meats served by the ADOC.[2]   Plaintiff characterizes this sensitivity as a "rare neurological condition."   Plaintiff contends that he has voluntarily abstained from eating lunch meats because they are the main source of his "aggravation," but alleges that he is still forced to eat the chicken and ground chicken, both of which make him "ill."   Plaintiff asserts that ingesting sodium nitrates causes headaches, migraines, dizziness, difficulty concentrating, deficits in short-term memory, chills, fatigue, weakness, arrhythmia, chest pain, muscle cramping, spasms, jolts, minor neurological pain throughout his body, and "parasthesia."[3]

Plaintiff further alleges that he suffered from "serious muscle cramping and spasms that left him unable to walk or sit-up" on four separate occasions: (1) on October 19, 2012, although Plaintiff does not know the cause of that incident; (2) on October 30, 2012, after ingesting bologna sandwiches the previous day served by the ADOC; (3) on June 5, 2013, after ingesting primidone (a medication) prescribed by a Corizon Nurse Practitioner; and (4) on June 30, 2013, after ingesting a hamburger the day before served by the ADOC.  Plaintiff asserts that on these occasions his "vitals were taken" and tests were run regarding a possible heart attack, but "the hospital" did not address Plaintiff's muscle cramping.

Plaintiff contends that on June 18, 2013, a doctor told Plaintiff he may be experiencing sensitivity to sodium nitrates, and the doctor submitted a "no nitrates" diet card for Plaintiff.  Plaintiff asserts that a nurse told him on June 21, 2013, that his "no nitrate diet" was denied.

---

[2] Plaintiff also asserts that he developed sensitivities to caffeine, nicotine, artificial sweeteners, and medications. Plaintiff's substantive allegations in his First Amended Complaint, however, relate only to his claim of being forced to consume sodium nitrates.

[3] "Parasthesia" is a "burning or prickling sensation that is usually felt in the hands, arms, legs, or feet, but can also occur in other parts of the body. The sensation, which happens without warning, is usually painless and described as tingling or numbness, skin crawling, or itching." National Institute of Health, National Institute of Neurological Disorders and Stroke, Paresthesia Information Page, http://www.ninds.nih.gov/disorders/paresthesia/paresthesia.htm (last visited April 13, 2015).

Plaintiff contends that in accordance with ADOC Department Order (DO) #1101.03, 1.1.1., he submitted a "Health Needs Requests" on May 13, 2012, June 24, 2012, October 31, 2012, June 30, 2013, and June 10, 2013, but that "[d]espite being seen on numerous occasions by Wexford and Corizon health care providers, the treatment was insufficient as . . . plaintiff remained undiagnosed, untreated, and still sufer[ing] from [a] neurological aggravation" due to being forced to eat processed meats containing sodium nitrates. Plaintiff asserts that "there is no known medical test(s) to be conducted for a sensitivity to sodium nitrates," but there "may be" an alternative test for neurological sensitivity, which Plaintiff asserts could diagnose his condition.

Plaintiff also asserts that he submitted four Informal Complaint Resolutions (ICRs) complaining that he was receiving inadequate treatment for his condition: one on October 21, 2012 to Jim Reinhart; one on June 21, 2013 to CO III Stodley; one on July 2, 2013 to Lewis; and one on June 30, 2013 to Hammer.  Plaintiff claims that "most of the responses" to his ICRs "were untimely and failed to provide proper medical care."

Plaintiff also asserts that he submitted grievances to Lewis on November 29, 2012, June 26, 2013, and June 30, 2013, to Hammer on July 24, 2013, and to Rojas on January 13, 2014, complaining that his serious medical need remained undiagnosed and untreated.  But Lewis, Hammer, and Rojas failed to ensure that Plaintiff received medical treatment for his condition, even though they were responsible for doing so in their positions.

Plaintiff further asserts that he submitted four grievances to Director Ryan, who is responsible for ensuring that inmates receive sufficient medical care, on May 26, August 1, August 11, and August 26, 2013.  Plaintiff asserts that Ryan failed to have Plaintiff examined for neurological sensitivity and replied to his August 1, 2013 medical grievance appeal that "the Department does not have a 'no nitrate diet.'"

Additionally, Plaintiff contends that he submitted two letters to Trinity, on June 21 and July 18, 2013, regarding Plaintiff's no nitrate diet, but never received a response. Plaintiff contends that Ryan, Trinity, Wexford, Corizon, and Molina all failed to provide

Plaintiff with a no nitrate diet.

Plaintiff alleges that Ryan, Wexford, Corizon, Lewis, Hammer, and Rojas implemented, created, and/or enforced policies, practices, or customs that prohibit Plaintiff from receiving a neurological sensitivity test and treatment for his medical condition, that limit officials' medical discretionary authority, that are vague, lack clarity, delegate unbridled discretion to defendants, and fail to provide remedial protective measures in response to the harm that resulted from denying Plaintiff medical care.

Plaintiff further contends that Ryan, Wexford, Corizon, Trinity, Dishman, and Molina implemented, created, and enforced medical and food service polices, practices, or customs that restrict inmates with Plaintiff's condition from receiving a medically necessary diet (a nitrate free diet), which have caused Plaintiff to suffer permanent damage to his equilibrium and a substantial risk of further permanent harm.  Finally, Plaintiff asserts that all Defendants knowingly and intentionally failed to provide him with medical care and were deliberately indifferent to his serious medical need.

In his Request for Relief, Plaintiff seeks declaratory and injunctive relief, monetary damages, a jury trial, and his costs of suit.

## IV.   Eighth Amendment Claims

Although *pro se* pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action, *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.  *Id*.

### a.  Official Capacity Eighth Amendment Claims

Any official capacity claims Plaintiff may be asserting against employees of Defendants Wexford, Corizon, or Trinity are duplicative because Plaintiff has also sued Defendants Wexford, Corizon, and Trinity.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent").

Thus, the Court will dismiss as duplicative any official capacity claims against employees of Defendants Wexford, Corizon, or Trinity.

As to any official capacity claims Plaintiff may be asserting against ADOC employees, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Plaintiff cannot maintain a lawsuit for damages against ADOC employees in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officials sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."); *see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) ("[A] state is not a 'person' for purposes of section 1983.  Likewise 'arms of the State' such as the Arizona Department of Corrections are not 'persons' under section 1983.") (citation omitted).

Plaintiff may maintain a lawsuit against ADOC employees in their official capacity for prospective injunctive relief.  *See Will*, 491 U.S. at 71, n.10 ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985)); *see also Flint v. Dennison*, 488 F.3d. 816, 825 (9th Cir. 2007) ("[A] suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity."). However, "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166; *see also Los Angeles County v. Humphries*, 562 U.S. 29, 131 S. Ct. 447, 453-54 (2010) (the "'policy or custom' requirement [in *Monell*] applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective."). A plaintiff must allege, as a matter of law, that the policy or custom caused him to suffer constitutional injury. *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006).

Plaintiff alleges that all of the individual Defendants were acting pursuant to a specific ADOC policy or custom of not providing medical care and/or a prescribed diet to inmates with Plaintiff's medical condition and that such a policy or custom caused Plaintiff to suffer a constitutional injury. Thus, Plaintiff may proceed on his official capacity claims against ADOC employees for prospective injunctive relief.

### b. Individual Capacity Eighth Amendment Claims

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). There is no *respondeat superior* liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell*, 436 U.S. at 691-92; *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Conclusory allegations that a Defendant or group of Defendants has violated a constitutional right are insufficient.

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must

both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

**i. Defendants Ryan, Hammer, Rojas, Lewis, Dishman, and Molina**

The Court finds that Plaintiff has sufficiently stated Eighth Amendment medical claims against Defendants Ryan, Hammer, Rojas, Lewis, Dishman, and Molina. Plaintiff asserts that each of these individuals was aware that Plaintiff's doctor prescribed a "no nitrate" diet and of his need for medical care when he suffered symptoms, and each of these individuals intentionally failed to provide Plaintiff with his prescribed diet or medical care, which Plaintiff alleges caused him injury. Accordingly, the Court will

require Defendants Ryan, Hammer, Rojas, Lewis, Dishman, and Molina to answer the First Amended Complaint.

### ii.  Defendants Wexford, Corizon, and Trinity

To state a claim under § 1983 against a private entity performing a traditional public function, such as providing meals or medical care to prisoners, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity.  *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997).  A plaintiff must allege the specific policy or custom and how it violated his constitutional rights.  A private entity is not liable simply because it employed individuals who allegedly violated a plaintiff's constitutional rights.  *See Tsao*, 698 F.3d at 1139.

Plaintiff alleges that Wexford and Corizon are liable because, pursuant to their policies and customs, they intentionally failed to provide Plaintiff with treatment for his condition, including medical testing to diagnose Plaintiff's condition and a nitrate free diet.  Similarly, Plaintiff asserts that pursuant to its policy or custom, Trinity failed to provide him with a no-nitrate diet, even though it was aware that a doctor prescribed such a diet for Plaintiff.  Plaintiff alleges that he has suffered injury due to his lack of medical care and being forced to consume sodium nitrates.  Therefore, the Court will also require Wexford, Corizon, and Trinity to answer Plaintiff's First Amended Complaint.

## V.  Warnings

### a.  Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### b.  Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections

unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4. If Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be notified of the requirements for service and copies for the Court that are required for inmates whose cases are not subject to General Order 14-17.

### c.    Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED** that:

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion to Grant Plaintiff's Untimely Motion for Leave to File A First Amended Complaint (Doc. 23), Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 24), Defendant Molina's Motion for Summary Judgment (Doc. 29), and the screening of Plaintiff's First Amended Complaint.  All other matters remain referred to the Magistrate Judge for disposition as appropriate.

(2) Plaintiff's Motion to Grant Plaintiff's Untimely Motion for Leave to File A First Amended Complaint (Doc. 23) is denied as moot.

(3) The Clerk of the Court shall file the documents lodged at Doc. 24, 25, and 26.

(4) Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 24) is denied as moot.

(5) April Dishman, named as a Defendant in the body of Plaintiff's First Amended Complaint, must be added as a Defendant on the docket.

(6) Any official capacity claims against employees of Wexford, Corizon, or Trinity are dismissed as duplicative.

(7) Defendants Ryan, Wexford, Corizon, Trinity, Dishman, Molina (formerly known as Martin), Hammer, Rojas, and Lewis must answer the First Amended Complaint.

(8) Defendant Molina's Motion for Summary Judgment (Doc. 29), which seeks judgment in her favor on Plaintiff's Eighth Amendment claim in his initial Complaint, is denied as moot.[4]

(9) The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Ryan, Wexford, Corizon, Trinity, Dishman, Hammer, Rojas, and Lewis.

(10) Plaintiff must complete[5] and return the service packets to the Clerk of Court within 21 days of the date of the filing of this Order for Defendants. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(11) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. *See* Fed.R.Civ.P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(12) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(13) The United States Marshal must notify Defendants Ryan, Wexford, Corizon, Trinity, Dishman, Hammer, Rojas, and Lewis of the commencement of this action and

---

[4] In addition, the Court denies Defendant's Motion for Summary Judgment as premature because Plaintiff has not had the opportunity for *any* discovery. *See Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004) (noting that "summary judgment is disfavored where relevant evidence remains to be discovered, particularly in cases involving confined pro se plaintiffs").

[5] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to these Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:**

(a) personally serve copies of the Summons, First Amended Complaint, and this Order upon the Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for the Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon the Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(14) **A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(15) Defendants must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

1     (16) Any answer or response must state the specific Defendant by name on whose

2   behalf it is filed. The Court may strike any answer, response, or other motion or paper

3   that does not identify the specific Defendant by name on whose behalf it is filed.

4     Dated this 24th day of April, 2015.

5

6

7

8   _____

9                David G. Campbell
                United States District Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28