KAB

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Nidez Valencia, Jr., | No. CV 14-01359-PHX-DGC (JZB) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Gregory Nidez Valencia, Jr., who is confined in the Arizona State Prison Complex-Lewis, filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. 33.) Before the Court is Plaintiff's Motion for a Preliminary Injunction (Doc. 50). The Court will deny the motion.

**I.     Background**

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment claims against Defendants Ryan, Hammer, Rojas, Lewis, Dishman, and Molina based on Plaintiff's allegations that those Defendants were deliberately indifferent to Plaintiff's serious medical needs when they denied him a "no nitrate diet" despite the fact that such diet was ordered by Plaintiff's doctor and that those Defendants did not properly treat or diagnose his "neurological sensitivity" to nitrates. (Doc. 32.) The Court further determined that Plaintiff stated Eighth Amendment claims against Defendants Wexford, Trinity, and Corizon based on Plaintiff's allegations that

1 Wexford, Trinity, and Corizon failed to provide Plaintiff treatment for his condition and failed to provide him a nitrate free diet pursuant to policies and customs. (*Id.*)

## II. Motion for Injunctive Relief

In his Motion, Plaintiff asserts that he has been experiencing "a chemical sensitivity to nicotine, caffeine, artificial sweeteners, and especially processed meats or rather the sodium nitrates they contain." (Doc. 51 at 1.) Plaintiff asserts that he has brain and nerve damage from prior use of methamphetamines and the brain and nerve damage is aggravated when he ingests sodium nitrates. (*Id.* at 4.) Plaintiff asserts that when he ingests sodium nitrates, he suffers from vertigo, chills, fatigue, muscle weakness, migraine headaches, arrhythmia, muscle cramping/spasms, and paresthesia between two and twelve hours after consumption. (*Id.* at 1.) Plaintiff asserts that he believes an M.R.I. and neuro-electrogram are necessary to "confirm [his] suspicions" that his symptoms are caused by ingestion of nitrates and that he has brain and nerve damage. (*Id.* at 1-3.) Plaintiff asserts that Dr. Dannewitz filled out a diet card for him and wrote "no nitrates." (*Id.* at 3.) Plaintiff asserts that his nitrate-free diet was denied on July 10, 2013. (*Id.*) Plaintiff further asserts that when his condition is confirmed by an M.R.I., the Arizona Department of Corrections (ADC) will still not provide him a nitrate-free diet, and he will qualify as a person with a disability under the Americans with Disabilities Act (ADA). (*Id.* at 3-4.) Plaintiff further asserts that his cellmates hate having to deal with his medical condition, which causes a threat to his safety as a threat to being harmed by his cellmate exists daily. (*Id.* at 5.) As a result of this threat to safety, Plaintiff asserts that he must be assigned an ADA cell with bottom tier/bottom bunk benefits with no cellmate. (*Id.*)[1]

---

[1] Plaintiff asserts that he needs an "Order from the Court assigning [him] permanently to an ADA cell, with a bottom tier/bottom bunk . . . with no cellmate." (Doc. 51 at 5.) Plaintiff's request is outside the scope of the claims in his First Amended Complaint. Plaintiff has not asserted a threat-to-safety claim in his First Amended Complaint and has not made allegations sufficient to state a claim regarding entitlement to an ADA cell or denial of a bottom tier/bottom bunk with no cellmate. As a result, it would be improper for the Court to issue a preliminary injunction based on these

As a result of the above assertions, Plaintiff requests "a preliminary injunction requiring defendants to arrange an M.R.I., neuroelectrogram examination, diet, treatment, and a plan of treatment by a qualified specialist, and . . . requiring the defendants to carry out that plan of treatment." (*Id.* at 6.)

Plaintiff asserts that he will suffer irreparable harm in the absence of an injunction because "the nitrates in processed meats chemically deprive plaintiff's brain of oxygen [and] he is threatened with irreparable harm in being he is at risk [sic] for further brain/nerve damage, stroke, and even death from being forced to ingest the meat served by the A.D.O.C. without a diagnosis from defendant Corizon." (Doc. 52 at 4-5.) Plaintiff asserts that the balance of hardships weigh in his favor because he will suffer irreparable harm in the absence of an injunction and Defendants will only have to do what they are already required to do in providing him constitutionally adequate medical care. (*Id.* at 6-7.) Plaintiff asserts that he is likely to succeed on the merits because if the Court issues an Order requiring an M.R.I. or neuro-electrogram test, it will prove Plaintiff's allegations that "sodium-nitrates chemically deprive his already damaged brain and nervous systems of oxygen." (*Id.* at 7.) Finally, Plaintiff asserts that an injunction will serve the public interest because "it is always in the public interest for prison officials to obey the law." (*Id.*)

In response, Defendants assert that, although Plaintiff offers conclusory statements that he has an untreated nitrate sensitivity, Plaintiff produces no evidence that he actually has such a sensitivity or that any Defendant has been deliberately indifferent to Plaintiff's serious medical needs. (Docs. 58, 61.) Defendants provide evidence showing that although Dr. Dannewitz assessed "anxiety vs. nitrate sensitivity" in Plaintiff's medical records on June 18, 2013, Dr. Dannewitz did not prescribe Plaintiff a "no nitrate" diet or

allegations. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (a party seeking injunctive relief must establish a relationship between the claimed injury and the conduct asserted in the complaint). Moreover, even if Plaintiff's request were related to the claims in his First Amended Complaint, his request would be denied because his assertions that there is a threat to safety based on being housed with others are vague and conclusory.

1  any other diet. (Doc. 61-1 at 2, ¶ 5.)  On July 10, 2013, Plaintiff had labs to test for
2  potassium and magnesium, which were both normal. (Doc. 30-2 at 25.)  Plaintiff had a
3  consultation with an outside neurologist on July 12, 2013.  (*Id.* at 17-19.)  The
4  neurologist suspected carpopedal spasms and ruled out epilepsy and recommended
5  complete lab screening and further diagnostic tests. (*Id.*)  On July 17, 2013, Plaintiff was
6  examined by a psychiatrist, who concluded that Plaintiffs' symptoms were consistent
7  with anxiety and panic attacks, with abrupt onset and obsessive preoccupation with
8  physiological symptoms. (*Id.* at 85.)  He diagnosed Plaintiff with panic attack disorder
9  and somatoform disorder and prescribed Celexa. (*Id.*)  On August 21, 2013, Plaintiff had
10 lab work done, which came back normal except for a low white blood cell count. (*Id.* at
11 21-23.)  Plaintiff was tested for allergies to chicken, beef, and turkey, but the results
12 showed no allergies. (*Id.* at 24.)

As a result of the above treatment, Defendants argue that they have diligently worked to diagnose Plaintiff's symptoms and Plaintiff has failed to show that they have been deliberately indifferent to his serious medical needs. (Doc. 61 at 8.)

In Response, Plaintiff argues that Corizon has "failed to diagnose [him] and has misdiagnosed [him] with anxiety." (Doc. 62 at 1.)  Plaintiff further asserts that he "knows" that an M.R.I. and neuroelectrogram test will confirm that he has nerve and brain damage from previous methamphetamine use and will confirm sensitivity to nitrates. (*Id.* at 2.)  Plaintiff further asserts that his migraines remain untreated and that on July 12, 2013, a doctor advised him to "cease consuming whatever it was that was causing [his] carpopedal spasms." (*Id.* at 3.)  Plaintiff asserts that nitrates are what cause his carpopedal spasms. (*Id.*)  Plaintiff further argues that it is well-documented that he suffers from paresthesia, which is not caused by anxiety. (Doc. 64 at 6-7.)  Plaintiff asserts that, even if he was suffering from anxiety, a different diet would help him. (*Id.* at 8.)

. . . .

. . . .

- 4 -

## III. Legal Standard

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d

987, 999 (9th Cir. 2000).

## IV. Discussion

On the record before the Court, Plaintiff has not carried his burden of showing that there are serious questions going to the merits of his claims. Plaintiff's assertions that he needs an M.R.I. and neuro-electrogram are not supported by evidence and appear to be mere supposition. The evidence submitted by Defendants shows that Plaintiff has been treated for his complaints and, although Plaintiff argues to the contrary, Plaintiff offers only conclusory assertions that Defendants have failed to treat him. Plaintiff's conclusions that his condition would be improved by a nitrate-free diet are not supported by any evidence. Although Plaintiff argues that he has been left untreated or misdiagnosed, Plaintiff does not produce evidence showing how the Defendants have failed to treat him or misdiagnosed him and has not produced evidence showing that any Defendant has been deliberately indifferent to his serious medical needs.

Accordingly, on the record before the Court, Plaintiff has failed to carry his burden of showing serious questions going to the merits of his claims, and his Motion for a Preliminary Injunction will be denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for a Preliminary Injunction (Doc. 50).

(2) Plaintiff's Motion for a Preliminary Injunction (Doc. 50) is **denied**.

Dated this 29th day of February, 2016.

_____
David G. Campbell
United States District Judge